## SUCCESSION OF ANTOINE CARRABY—ETIENNE CARRABY, Appellant.

Where a stranger to a succession withholds the price of property purchased at a sale of its effects, an action for the amount can be brought only before a court of ordinary jurisdiction. *Aliter*, where a legatee and universal heir seeks to avail himself of the privilege allowed by art. 1265 of the Civil Code, of retaining the price of property so adjudicated until his share shall be fixed by a partition. The rights of a co-heir, who exercises this privilege, must be settled contradictorily with the other heirs, under the direction of the Court of Probates, whose decree must fix the portion coming to each. Until this be done, the heir who purchases keeps the purchase money as a kind of deposit, subject to the decision of the Court of Probates, which must determine what he is to pay over. The court which makes such a decree, must have authority to enforce obedience to it.

Before delivering the whole estate into the hands of an universal heir, the executor has a right to require, that a sufficient sum be placed in his hands to pay the particular legacies. C. C. 1664.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

MORPHY, J. The facts which led to this controversy, relate to the settlement of the estate of the late Antoine Carraby. In his last will, the deceased, after bequeathing one-fourth of the nett proceeds of all his property to his natural children, declares that all the particular legacies which he makes, to the amount of $62,000, are to be borne by, and paid out of the three remaining fourths of his succession. He institutes his brother, Etienne Carraby, the present appellant, his sole and universal heir, for any surplus of his property which may be left, after the payment ot

all his just debts and the particular legacies. Among the latter was one of $15,000 to the said E. Carraby, and one of $10,000 to Arnaud Carraby, another brother of the deceased. This last amount, according to the will, is to be paid over to Étienne Carraby, to be by him laid out at interest, or invested in real estate, and the interest, or the rent, as the case may be, paid every month to Arnaud Carraby. The testator concludes by appointing Etienne Carraby his executor ; and in case of death, absence, or inability to act from any other cause on the part of Carraby, he appoints in his place, his nephew, Philippe Guesnon. After administering for some time on the estate, Etienne Carraby resigned his trust, whereupon P. Guesnon qualified as executor, and proceeded to sell all the property belonging to the estate. At this sale, Etienne Carraby purchased property to the amount of $44,845, in payment of which he receipted to the executor for the $25,000 coming to him for his own particular legacy, and that of his brother, Arnaud Carraby. For the balance of the price, he gave endorsed notes, which he afterwards prevailed upon his nephew, Guesnon, to return to him before they became due. He appears to have received them back as money which might be coming to him as the universal heir of the deceased. Guesnon, throughout his administration, suffered Carraby to intermeddle with it by paying part of the debts and legacies, and by receiving funds belonging to the estate in his capacity of universal legatee. On the 20th of November, 1838, the executor, at the instance of Carraby, filed an account of his administration. From this account it appeared that, after paying the debts of the estate, the executor had made to himself and some of the legatees, partial payments, amounting to $17,896 63, and that the universal legatee, E. Carraby, had received or retained on the purchases made by him, $32,273 29, besides the $25,000 receipted for as particular legacies. It further appeared, that an amount of $12,454, in notes, had been returned by the executor as uncollected and of no value. This account was opposed by several of the legatees, and by the curator of John Gravier's estate. The former, after objecting to several items of the account, opposed its homologation mainly on the ground, that the executor had no right to pay certain legatees in preference to others, and that, as the estate appeared insuffi-

cient to pay them all, he should not have paid over the funds in his hands to Carraby, or compensated with him for the property he had bought of the estate. The curator of J. Gravier's succession urged that he had a claim of $60,000 against the testator's estate, and had obtained thereon a judgment for upwards of $20,000. That an appeal had been taken by the executor, in which he, the curator, had joined, praying that the judgment might be amended so as to allow him the whole amount of the claim. That the payments alleged to have been made were unauthorized, and that no legacies should be paid until his claim be finally settled and satisfied. To these several oppositions, the executor answered, averring, among other things, that, with the exception of certain payments by him made to some of the creditors and legatees, he has handed and paid over to the universal legatee, all the sums he received or collected on behalf of the estate, and that the said E. Carraby is answerable for the same, and is bound to refund said sums, as also the amount by him kept and retained on the price of the property he purchased, to enable him, the executor, to deposit the same in court, subject to a final decision on the several oppositions filed. The executor prays, in conclusion, that E. Carraby, and the several legatees by him paid, may be made parties to the proceedings, and be decreed to refund such sums as may be found to have been improperly received or retained by them. In answer to the executor's call in warranty, and to the several oppositions by the legatees, E. Carraby averred that, as universal heir of the deceased, he is entitled to a delivery of the estate, after payment of the debts and particular legacies. That he is by law authorized to retain in his hands the price of the property he bought, till the final settlement of the succession, being the universal heir to whom the executor has finally to account, and being, moreover, entitled to two legacies, amounting together to $25,000. That in relation to the $32,273 29, for which he is said to be accountable, he has actually paid, to the discharge of the succession, the sum of $9,402 10, thus reducing the balance in his hands to $22,871 19, which he has a right to keep until a final settlement of the estate, which can take place only after a final decision in the suits pending in the Supreme Court. He prays, after other averments, that the executor be or-

dered to deliver to him as universal legatee, the whole succession, including the sums prematurely paid to the legatees, reserving to the latter their right of claiming of him, E. Carraby, their respective legacies, when the decision of the suit pending against the estate shall have shown its real amount.

Under these pleadings, which have been stated only so far as was necessary to a proper understanding of the case, the parties went to trial. After passing upon the contested items of the account, the judge below ordered the several legatees, who had received any portion of their legacies, to refund the same; and condemned the universal legatee, E. Carraby, to pay to the executor, the whole amount by him received or retained, to enable the latter to liquidate and settle the estate.

Before touching the merits of this case, which can be considered only as regards E. Carraby, who alone has appealed, an exception taken to the jurisdiction of the Court of Probates must be disposed of. It is said that as the want of jurisdiction is *ratione materiæ*, and the court is one of limited powers, no consent or act of Carraby can give it jurisdiction. We cannot admit that, in a case like the present, the Court of Probates is without jurisdiction *ratione materiæ*. If the appellant were a stranger to the succession, withholding the price of property purchased by him, he would be suable therefor only in the ordinary courts; but here, in his capacity of legatee and universal heir, he seeks to avail himself of the privilege acceded to co-heirs by article 1265 of the Civil Code, of retaining the price of succession property adjudicated to them, until their share has been definitively fixed by a partition. The rights of a co-heir who exercises this privilege are to be settled contradictorily with the other heirs, under the control of the Court of Probates, whose decree must fix the portion coming to each heir. Until this be done, the co-heir who purchases keeps the purchase money as a kind of deposit, in his hands, subject to the ulterior decision of the Court of Probates, which must determine what portion of it belongs to him as a co-heir, and what portion he is bound to pay over. The court, which has made such a decree, must have jurisdiction to compel obedience to it. The record shows, moreover, that large sums of money have been received by E. Carraby, in his capacity of uni-

versal heir; and, as such, he claims not only the right of retaining them, but also prays for a delivery of the whole estate into his hands. Before complying with this demand, the executor has surely the right of requiring that a sufficient sum be placed in his hands to pay the particular legacies. Civ. Code, art. 1664. Of these matters and issues, the Court of Probates is certainly not without jurisdiction, *ratione materiæ*.

Since the rendition of the judgment below, both Guesnon and Carraby have failed, and the dative testamentary executor, appointed in lieu of the former, and the syndics of the creditors of the latter, have been made parties to this appeal. A more material change has also taken place in the state of the facts, upon which the judge below had to pronounce, which is that the only outstanding claim against the deceased, to wit, that of the estate of John Gravier, no longer exists. This fact has been asserted at the bar and not denied. It is moreover within our own knowledge, as it results from a decision of this court in the case of *Gravier's Curator* v. *Carraby's Executor*. 17 La. 118. By reason of this circumstance, which limits the distribution of the funds of the estate among the heirs and legatees under the will, we have been earnestly requested to determine at once the sum which the appellant is bound to pay back to the executor, and to amend the judgment accordingly, instead of remanding the case for adjustment below. It has been suggested that, under the peculiar situation of the parties, and in consequence of the judgment of the Probate Court having become final, as to all of them, except Carraby, who alone has appealed, a reversal of the judgment as to him might frustrate the ends of justice, by depriving the appellee of the judicial mortgage on his estate, when it is manifest that he owes and is bound to refund a large portion of the sum he has been decreed to pay. The record enables us to comply with the request of the appellee's counsel, and we deem it our duty, under the circumstances of this case, to do so. Code of Pract. art. 905.

It is clear that the appellant should not be compelled to pay over to the executor all the sums by him received or retained, and then await a settlement of the estate to receive back the portion

which may be coming to him. Independent of article 1265 of the Civil Code which he invokes, we have uniformly held, that no one should be made to pay the whole amount of a sum which, when paid, he will be entitled to receive back in whole or in part. 8 La. 301. 1 Robinson, 535. In order to determine the amount to be paid by the universal legatee out of the sums he detains, we must ascertain the situation of the estate in relation to the legacies to be paid under the will. From the record, it is as follows, to wit:

| | |
|---|---:|
| Amount of the estate as per executor's account, | $97,033 58 |
| Notes returned as of no value, | 12,454 00 |
| | $84,579 58 |
| The debts paid amount to | 9,409 55 |
| Leaving, for nett proceeds, | $75,170 03 |
| Of which one-quarter, under the will, goes to the natural children of the deceased, | 18,792 50 |
| Thus leaving for the remaining three-quarters, | $56,377 53 |

This sum, being insufficient to pay the particular legacies, the universal legatee can only retain on his particular legacy of $25,000, such proportion of it as would be coming to him, on a *pro rata* distribution of the remaining three-quarters of the estate among all the legatees.

| | |
|---|---:|
| The proportion would be | $22,732 87 |
| He is, moreover, entitled to retain, for so much paid by him to the legatees out of funds in his hands, | 6,902 10 |
| Making the amount to be retained, | $29,634 97 |
| The record shows that, deducting the debts of the succession proved to have been paid by him, Carraby yet detains a sum of | $57,273 10 |
| From which deducting the amount he is authorized to retain, | 29,634 97 |
| He has to refund | 27,638 13 |

If to this sum be added the aggregate amount of legacies paid by both Carraby and Guesnon, to wit,     24,798 73

We find     $52,436 86

A sum sufficient to pay the natural children their one-quarter,     $18,792 50

And the *pro rata* amount of the other particular legacies, to wit,     33,644 36     52,436 86

Thus showing that $27,638 13 is the amount which the appellant has to reimburse the executor, to enable the latter to settle and liquidate the succession.

It is therefore ordered, that the judgment of the Court of Probates be so amended, that the executor of the estate of the late Antoine Carraby recover of the syndics of Etienne Carraby's creditors, only a sum of $27,638 13, instead of $62,303 49, which he is decreed to pay by the judgment appealed from. The costs of this appeal to be borne by the appellee.

*Roselius*, for the appellant.

*Hoa*, contra.